IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ALEXANDRIA SURVEYS INTERNATIONAL, LLC, <br><br> Debtor. <br><br> ALEXANDRIA SURVEYS, LLC, <br><br> Appellant, <br><br> -v- <br><br> ALEXANDRIA CONSULTING GROUP, LLC, <br><br> Appellee. | Civil Action No. 1:13-CV-00891 <br> Bankr. Case No. 10-11559-BFK <br> Chapter 7 |

### MEMORANDUM OPINION

I. **Overview**

Before the Court is a bankruptcy appeal brought by Appellant Alexandria Surveys, LLC, arising from the April 26, 2013 ruling of the United States Bankruptcy Court for the Eastern District of Virginia (Dkt. No. 1-2). The appeal has been fully briefed (Dkt. Nos. 4, 5, 6) and the Court heard oral argument on October 4, 2013. This Court has also considered the parties' additional submissions in response to its October 7, 2013 order regarding the distinction between computers and servers (Dkt. Nos. 10, 11). For the reasons stated in open court and those set forth below, the Court now issues this opinion ruling in favor of the Appellant and reversing the decision of the bankruptcy court to the extent that it conflicts with this opinion.

## II. Background

The debtor, Alexandria Surveys International, LLC ("Alexandria International"), was a local surveying company formed by John Hoofnagle in 2000. It initially filed for bankruptcy under Chapter 11 on March 3, 2010. The debtor's assets were scheduled on March 12, 2010, including Schedule B, on which the debtor's personal property was listed. On January 27, 2012, the Chapter 11 proceeding was converted to a Chapter 7 proceeding and Robert O. Tyler was appointed as Chapter 7 Trustee for the debtor. Mr. Tyler filed a Chapter 7 Trustee's Report of No Distribution on April 18, 2012 and the case was closed on May 18, 2012.

Shortly after Alexandria International ceased business in October 2010, Sharon Hoofnagle and Michael Flynn formed the Appellant, Alexandria Surveys, LLC ("Alexandria LLC"), and began doing business out of the debtor's old location. In October 2012, Alexandria LLC acquired the former telephone number and web address of the debtor from Cox Communications. Alexandria LLC also acquired other property formerly owned by the debtor, including computer equipment and hard drives.

On November 7, 2012, Alexandria Consulting Group, LLC ("ACG"), another Northern Virginia surveying firm, filed a Motion to Reopen to Administer Assets under 11 U.S.C. § 350(b), claiming that it was interested in purchasing personal property remaining in the bankruptcy estate that was not scheduled (specifically, Alexandria International's customer lists, files, web page, and phone and facsimile numbers). The Motion was opposed by the debtor, Alexandria International, but the Bankruptcy Court issued an order reopening the case on December 31, 2012. Alexandria LLC was not a party to that proceeding.

The Chapter 7 Trustee provided notice of the upcoming sale of assets in the bankruptcy estate, to which Alexandria LLC objected on the basis that the assets in question became

abandoned when the case was closed in May 2012. Nevertheless, Alexandria LLC stated that it would participate in the auction. The trustee thereafter conducted an auction to sell the assets identified in ACG's Motion to Reopen, with ACG and Alexandria LLC as the sole bidders. At the auction on February 8, 2013, ACG successfully outbid Alexandria LLC and purchased the assets for $28,100, which it immediately paid to the trustee.

The trustee then moved for an order requiring Alexandria LLC to turn over the purchased assets to ACG, to which Alexandria LLC objected. On April 26, 2013, the Bankruptcy Court issued an order granting the trustee's motion to require the turnover of some of the purchased assets to ACG. With respect to the debtor's physical files and computers, the Court held that they *were* listed in the debtor's schedules and were therefore abandoned when the case was closed and were no longer a part of debtor's estate. But as to the survey and title files, the server and its digital files, the phone numbers, and the website, the Court ruled that they *were not* listed in the debtor's schedules and therefore were *not* abandoned and could be sold as part of the bankruptcy estate. It is this ruling from which Alexandria LLC now appeals.

### III. Analysis

Alexandria LLC raises three issues on appeal. First, Alexandria LLC argues that ACG, an alleged local competitor in the surveying business, was not an "interested party" in Alexandria International's bankruptcy and therefore had no standing to move to reopen the debtor's estate. Second, Alexandria LLC argues that the web address and phone numbers sold to ACG at auction were not the debtor's property, and therefore could not be properly sold as part of the bankruptcy estate. Finally, Alexandria LLC challenges the bankruptcy court's determination that the debtor's servers were never listed on its Schedule B (and consequently, that the servers were not

abandoned and were properly sold after the estate was reopened). Alexandria LLC argues that the scheduling and abandonment of debtor's "Computers" included the servers in question, and that there was no basis in the record for the bankruptcy court's different treatment of the two. As each of these issues is a question of law, or a mixed question of law and fact, this Court reviews the findings of the bankruptcy court *de novo*. *In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003).

<u>ACG's Standing to Reopen Alexandria International's Bankruptcy Estate</u>

Under 11 U.S.C. § 350(b), the bankruptcy court may reopen a case "to administer assets, to accord relief to the debtor, or for other cause." However, Federal Rule of Bankruptcy Procedure 5010 only permits a case to be reopened "on motion of the debtor *or other party in interest*." Fed. R. Bankr. Proc. 5010 (emphasis added). While the term "party in interest" is not defined in the Rules, its scope is addressed elsewhere in Title 11. In 11 U.S.C. § 1109(b), "party in interest" is defined by reference to "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." In other words, a "party in interest" under Title 11 includes the debtor itself, a trustee, or a creditor. Furthermore, the Fourth Circuit has held in the Chapter 7 context that a "party in interest" includes "all persons whose pecuniary interests are *directly affected* by the bankruptcy proceedings." *In re Hutchinson*, 5 F.3d 750, 756 (4th Cir. 1993). The 10th Circuit has also specifically held, citing the 4th Circuit's decision in *Hutchinson*, that the only "parties in interest" for purposes of a 350(b) motion are debtors, trustees, and creditors. *In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995).

Appellant's primary argument on appeal is that ACG was not an "interested party," and therefore had no standing to move to reopen Alexandria International's bankruptcy proceeding. It

is undisputed that ACG was not a creditor of the debtor and was not a participant in the original case. Rather, ACG is another firm engaged in residential surveying in Northern Virginia. ACG therefore does not appear to fit within the definition of "interested party" envisioned by Title 11 and the Fourth Circuit.

ACG argues that this Court should not entertain Appellant's argument on standing because 1) it is being presented for the first time on appeal, and 2) this appeal arises from the Trustee's Request of Approval of Sale, and not the Motion to Reopen itself. Neither argument is availing. Although ACG is correct that this is the first time the Appellant has fully raised the standing argument, this is Appellant's first true opportunity to raise the argument and it is therefore properly presented here. The Appellant was not a party to ACG's Motion to Reopen, which involved only ACG and the debtor, Alexandria International. Although ACG argues that Appellant should have raised its objection to the Motion to Reopen because it had actual notice (Sharon Hoofnagle, part-owner of the Appellant, was testifying on behalf of the Debtor at the hearing on the Motion to Reopen), it is not clear that Appellant would have been an "interested party" eligible to object at that point because none of its assets had yet been sold.

Once the Motion to Reopen was granted, Appellant objected to the Notice of Sale and to the Trustee's Motion for Order Requiring Turnover of Property, from which it has now appealed. Although Appellant did not delve deeply into the standing issue in its objection to the Notice of Sale, it did specifically state that "ACG was not a creditor or an equity security holder of the debtor, nor was it an interested party in this case, but is simply a competitor." Dkt. No. 1-17 (Bankr. Doc. 209). Appellant also stated in its objection that ACG was "not a creditor or party in interest as defined in the Code, and thus perhaps without standing." *Id.* Appellant therefore raised the standing argument at the appropriate time, and it is properly presented before the Court.

This Court finds that because ACG was not the debtor, a trustee, or a creditor of Alexandria International, it was not an "interested party" within the meaning of 11 U.S.C. § 350(b). ACG was therefore without standing to reopen Alexandria International's bankruptcy case and as a result, any sale of Alexandria International's assets to ACG at the subsequent auction is hereby void.

Sale of Web Address and Telephone Numbers

Appellant further argues that even if the sale of Alexandria International's assets to ACG was valid, the sale of the web address and telephone numbers was improper because neither were the property of the bankruptcy estate (and therefore neither could be sold by the trustee).[1] The property of the bankruptcy estate is defined in 11 U.S.C. § 541(a)(1) as "all legal and equitable interests of the debtor in property as of the commencement of the estate." With respect to the status of telephone numbers, there is a split of authority among the circuits. The Ninth Circuit and the Second Circuit have specifically held that a trustee lacks the right to distribute a telephone number as property of the estate, see *Rothman v. Pacific Tel. & Telegraph Co.*, 453 F.2d 848, 849–50 (9th Cir. 1971); *Slenderalla Sys. of Berkeley, Inc. v. Pacific Tel. & Telegraph Co.*, 286 F.2d 488, 490 (2d Cir. 1961), while the First and Fifth Circuits have taken the opposite position, see *Darman v. Metropolitan Alarm Corp.*, 528 F.2d 908, 910 n.1 (1st Cir. 1976); *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056, 1059 (5th Cir. 1975).[2]

Although the Fourth Circuit has not specifically addressed this issue, it is well-settled that

---

[1] Although this Court has found that the sale of the debtor's assets to ACG was invalid because ACG lacked standing to reopen the estate, it remains necessary to rule on the status of the web address, telephone numbers, and servers in the event that the bankruptcy estate is validly reopened in the future.
[2] The Third and Seventh Circuits have also found that subscribers have no property or possessory interest in telephone numbers. See *Bus. Edge Grp., Inc. v. Champion Mortgage Co.*, 519 F.3d 150, 154 (3d Cir. 2008); *In re StarNet, Inc.*, 355 F.3d 634, 637 (7th Cir. 2004).

the contours of the property interests assumed by the trustee are determined by state law. *Butner v. United States*, 440 U.S. 48, 48–49 (1979). Accordingly, Appellant cites the Virginia Supreme Court's relatively recent decision in *Network Solutions, Inc. v. Umbro International, Inc.* for the proposition that a judgment debtor has no property right in its telephone numbers and web address. In *Network Solutions*, the Virginia Supreme Court held that a web address and telephone number could not be garnished by a judgment creditor because the debtor lacked a property interest in them. 529 S.E.2d. 80, 86–87 (Va. 2000) (stating that "a domain name registrant acquires the contractual right to use a unique domain name for a specified period of time" and that a domain name is not personal property, but rather "the product of a contract for services").

In the absence of controlling Fourth Circuit precedent, this Court refers to *Network Solutions* to define a debtor's property interest in its web address and telephone numbers in Virginia. Although ACG argues that *Network Solutions* is distinguishable because it relates to a garnishment proceeding rather than a bankruptcy, the garnishment context does not change the *Network Solutions* court's holding that the use of a domain name is a "contractual right" that does "not exist separate and apart from [the provider]'s services that make the domain names operational Internet addresses." *Id.* at 86. While telephone numbers and web addresses are important branding tools and certainly have value to those who use them, that subjective value does not equate to ownership under Virginia law. The Virginia Supreme Court confirmed in *Network Solutions* that neither telephone numbers nor domain names were garnishable personal property because "neither one exists separate from its respective service that created it." *Id.* at 87.[3] Therefore, because Virginia does not recognize an ownership interest in telephone numbers and web addresses, neither were property of Alexandria International's estate and neither were

---

[3] The Eastern District of Virginia also recently held that despite the "split of authority" on this issue, a plaintiff had no property interest in a telephone number. *See Southeastern Wholesale Corp. v. Cox Communications Hampton Roads, LLC*, 2013 WL 2147478, No: 2:12-cv-00701 (E.D.V.A. May 14, 2013).

7

subject to sale by the trustee (nor would they be subject to sale in any future proceeding).

Furthermore, even if Alexandria International did have possessory interests in the use of the telephone numbers and web addresses, those interests were the product of executory contracts with Cox Communications that were irrevocably rejected by the trustee before the estate was reopened. The telephone and web hosting contracts were scheduled on Schedule G, titled "Executory Contracts." Chapter 11 provides that "if the trustee does not assume or reject the executory contract . . . of the debtor within 60 days after the order for relief . . . such contract or lease is deemed rejected." 11 U.S.C. § 365(d)(1). It is undisputed that the trustee did not assume the contracts with Cox within the time required by the statute. Thus, even if Alexandria International had an intangible property interest in the web address and telephone numbers, that interest was abandoned when the trustee failed to assume the service contracts. Because Alexandria International's estate had no property interest in the phone numbers and web address (or, at most, had a contractual interest in them that the trustee failed to assume), neither could be sold as part of Alexandria International's bankruptcy estate.

Distinction Between "Computers" and Servers

The final issue raised on appeal is whether the "Computers" listed on Alexandria International's Schedule B included the debtor's servers. After reviewing the additional submissions provided by the parties, this Court finds that the servers were *included* among the "Computers" listed in Schedule B, and were therefore abandoned and no longer property of the debtor's estate at the time the case was reopened. As Appellant stated in its brief, Alexandria International's servers "were, in fact[,] desktop computers used in that capacity." App. Br. at 5. Based on that undisputed description, this Court finds no basis for distinguishing between

computers used as traditional desktops and computers used as servers when Schedule B listed "Computers" broadly. Although "computers" and "servers" were occasionally referred to as distinct items in hearings before the bankruptcy court, there was no testimony from which the court could determine that the servers were anything more than computers (as listed in Schedule B) being used for a specific function.

While the bankruptcy court was forced to make a difficult judgment in the absence of any additional information or investigation, this Court finds that a distinction between computers and servers cannot be sustained based on the lack of evidence in the record. Therefore, because the debtor's servers were among the "Computers" listed in Schedule B, they were abandoned and not subject to sale upon the reopening of Alexandria International's estate.

## IV. Conclusion

After reviewing the pleadings and the record in this case, for the reasons stated above, this Court rules in favor of the Appellant on each of the three issues raised in this appeal. An order will follow.

November 7, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge